## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES of AMERICA,

    Plaintiff,

    v.

MARK ALAN SCHWARTZ,

    Defendant.

No. 22 CR 635

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Defendant Mark Alan Schwartz is charged in an indictment with six counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). (Dkt. 1.) Before the Court is Defendant's motion to dismiss the indictment. (Dkt. 28.) Defendant argues that, because the Government has not alleged any person was deprived of a traditional property interest protected under Section 1343, an essential element of a wire fraud charge, the indictment must be dismissed. (*Id.* at 13.) For the reasons that follow, Defendant's motion (Dkt. 28) is denied.

## I.     BACKGROUND

Defendant Mark Alan Schwartz was indicted by a grand jury on charges of wire fraud in violation of 18 U.S.C. § 1343 and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). (Dkt. 1.) As alleged in the Indictment, Defendant devised and participated in a years-long scheme to take over numerous companies through a

variety of fraudulent methods and means. (*Id.* at 2–48.) The Indictment further alleges that Defendant illegally used an individual's personal identity information in furtherance of the scheme. (*Id.* at 49–50.)

Defendant seeks to dismiss the Indictment based on the Supreme Court's ruling in *Ciminelli v. United States*, 598 U.S. 306 (2023). (Dkt. 28 at 6.) Defendant argues that, as *Ciminelli* recognized, Section 1343 protects only traditionally recognized property interests; the Government's reliance on a "right to control" theory thus cannot stand. (*Id.* at 6, 8–27.) Defendant further argues that, since the wire fraud counts fail, the identity theft counts must also fail, as they depend on the wire fraud counts. (*Id.* at 27–28.) Defendant contends that the Indictment must therefore be dismissed. (*Id.* at 28.)

The Government rejects these arguments. (Dkt. 29.) According to the Government, *Ciminelli* is inapplicable because the Government is not relying on the right to control theory or any analogous intangible-rights theory; rather, the Indictment proceeds under a traditional property-rights theory, which, as conceded by Defendant, remains intact after *Ciminelli*. (*Id.* at 7, 27–43.) Because the wire fraud counts survive, the Government also contends the aggravated identity theft counts survive. (*Id.* at 43–44.) Accordingly, the Government argues the Indictment survives Defendant's attack. (*Id.* at 44.)

## II.    STANDARD OF REVIEW

Under Rule 12(b)(1) of the Federal Rules of Criminal Procedure, a "party may raise by pretrial motion any defense, objection, or request that the court can

determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When considering a motion to dismiss a criminal indictment, the Court assumes that the indictment's factual allegations are true and must "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *see also United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (per curiam) ("An indictment is reviewed on its face, regardless of the strength or weakness of the government's case.").

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To be legally sufficient, an indictment must accomplish three things: "First, it must adequately state all the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, [it] must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). In other words, the indictment must "provide the defendant with some means of pinning down the specific conduct at issue," but it need not include every relevant fact. *Id.* (cleaned up). Courts "review indictments on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.* (cleaned up).

## III.  DISCUSSION

Defendant raises two arguments in his motion. Defendant first argues that the wire fraud counts should be dismissed because the theory they rely on is foreclosed by the Supreme Court's recent decision in *Ciminelli*. (Dkt. 28 at 8–13, 15–27.)

Defendant also argues that the aggravated identity theft counts must be dismissed because they are derivative of the wire fraud counts. (*Id.* at 27–28.) Each of these arguments is addressed in turn.

## A.  Wire Fraud

Section 1343 criminalizes "scheme[s] or artifice[s] to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.S.C. § 1343. A wire fraud conviction requires the Government to prove that: (1) the defendant knowingly devised or participated in a scheme or plan to defraud; (2) with the intent to defraud; (3) the scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and (4) for the purpose of carrying out the scheme or attempting to do so, defendant caused interstate wire communications to take place in the manner charged. William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit 538 (2023 ed.); *see also United States v. Pacilio*, 85 F.4th 450, 462 (7th Cir. 2023) ("To convict a defendant of wire fraud, the government must prove three elements: (1) the defendant participated in a scheme to defraud; (2) the defendant intended to defraud; and (3) a use of an interstate wire in furtherance of the fraudulent scheme.").

As the Supreme Court has explained, Section 1343's " 'money or property' requirement" limits the " 'scheme or artifice to defraud' element because the 'common understanding' of the words 'to defraud' when the statute was enacted referred to 'wronging one in his property rights.' " *Ciminelli*, 598 U.S. at 312 (quoting *Cleveland v. United States*, 531 U.S. 12, 19 (2000)). As a consequence, the government must

prove not only that a defendant charged with wire fraud " 'engaged in deception,' but also that money or property was 'an object of their fraud.' " *Ciminelli*, 598 U.S. at 312 (quoting *Kelly*, 590 U.S. at 398).

### 1. The Ciminelli Decision

Defendant first argues the Court should dismiss Counts I–VI of the Indictment because they are legally defective under *Ciminelli*. (Dkt. 28 at 13.) *Ciminelli* involved a scheme by political operatives to tailor a state-funded bidding process so that LPCiminelli (Ciminelli's construction company) was virtually guaranteed to be designated a "preferred developer." 598 U.S. at 309–10. That status, in turn, ensured that LPCiminelli would be chosen for construction projects that were part of the lucrative "Buffalo Billion" program—a funding initiative to invest $1 billion in the city of Buffalo, New York. *Id.* at 310. In prosecuting Ciminelli, the government relied solely on the Second Circuit's right to control theory, under which Ciminelli was guilty of wire fraud if he participated in a "scheme to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." *Id.* at 310–11. In other words, the government argued that, by secretly rigging the bidding process to favor his company, Ciminelli deprived the entity that was responsible for selecting the project developer of "property": its right to economically valuable information. *Id.* at 311. At trial, the district court instructed the jury that the term "property" in Section 1343 "includes intangible interests such as the right to control the use of one's assets." *Id.* At the conclusion of the trial, the jury found Ciminelli guilty of wire fraud and conspiracy to commit wire fraud; Ciminelli's

conviction was affirmed at the Second Circuit before heading to the Supreme Court.
*Id.*

Reversing the conviction, the Supreme Court rejected the prosecution's theory
as "unmoored" from the text of the federal fraud statutes, which are "limited in scope
to the protection of property rights." *Id.* at 314–15 (citation omitted). *Ciminelli*
explained that the right to control theory of wire fraud where a defendant's scheme
deprives a victim of "potentially valuable economic information . . . necessary to make
discretionary economic decisions" is not viable under Section 1343. *Id.* at 308.
Section 1343 reaches only traditional property interests such as money, and those
interests do not include the right to information needed to make discretionary
economic decisions. *Id.* at 316.

### 2. *Ciminelli's application to Schwartz*

Defendant argues that the scheme the Government alleges here is essentially
the same as the one the Supreme Court rejected in *Ciminelli*. (Dkt. 28 at 14.) The
Government counters that *Ciminelli* does not apply because the Indictment alleges
Defendant defrauded "victims of money and property . . . [,] not valuable economic
information, as in *Ciminelli*." (Dkt. 29 at 26.)

Defendant's contention that *Ciminelli* requires dismissal of the Indictment
fails for several reasons. *First*, unlike in *Ciminelli*, neither the "right to control" nor
depriving a victim of "economically valuable information" was the object of the
scheme to defraud charged in this case. Contrary to Defendant's assertions (*see* Dkt.
28 at 8–12), the Government's allegations focus on the Defendant's obtaining, or

6

attempts to obtain, money and property by fraud, and these allegations are explicit in the Indictment (*see, e.g.*, Dkt. 1 at 13–16, 24–25, 27–35 40–43). *Ciminelli* says nothing about federal criminal liability for such actions, which are archetypal subjects of federal fraud prosecutions.[1] *See, e.g.*, *Shaw v. United States*, 580 U.S. 63, 67 (2016) ("Many years ago Judge Learned Hand pointed out that '[a] man is none the less cheated out of his property, when he is induced to part with it by fraud,' even if 'he gets a quid pro quo of equal value.' ") (quoting *United States v. Rowe*, 56 F.2d 747, 749 (2d Cir. 1932)).

*Second*, the Supreme Court's decision in *Ciminelli* left open whether the defendants could have been convicted on an alternative theory on the same facts. *Ciminelli's* indictment did not allege that contracts were the property the defendants sought to obtain. *See Ciminelli*, 598 U.S. at 310 n.1. But here, the Indictment alleges the object of the fraudulent scheme as obtaining "money and property" from three categories of victims: (1) Victim 1 and other company shareholders; (2) Company 1-PR and Company 2-PR; and (3) the university that owned the intellectual property rights to Victim 1's invention. (Dkt. 1 at 7.) That money and property all falls within the reach of Section 1343. Moreover, the Indictment does not allege that Defendant sought to deprive any entity of its right to control its assets by depriving it of

---

[1] *Ciminelli* is about instructional error, not the sufficiency of an indictment. In its ruling, the Supreme Court did not opine on whether any other theory of liability would have been valid. 598 U.S. at 317–18 (Alito, J., concurring) (expressly noting that the Court's opinion did not "address," among other things, either "the indictment's sufficiency" or "the Government's ability to retry petitioner on the theory that he conspired to obtain, and did in fact obtain, by fraud, a traditional form of property, viz., valuable contracts"). It is an open question whether the holding of *Ciminelli* could support the dismissal of an indictment.

economically valuable information. This is true even if the scheme involved affirmative misrepresentations about information that the alleged victims considered material.

*Third*, the Indictment tracks the statutory language of Section 1343, which generally is sufficient for pleading purposes. *United States v. White*, 610 F.3d 956, 958–59 (7th Cir. 2010). As long as "the indictment states sufficient facts to place a defendant on notice of the specific conduct at issue," it generally survives an attack. *Id.* at 958–59. And "[w]hen the charge is [wire fraud], this court uses a broad rather than a technical standard to determine the sufficiency of an indictment." *United States v. Palumbo Bros.*, 145 F.3d 850, 868 (7th Cir. 1998). Defendant's Indictment goes well beyond what is required and alleges specific instances in which Defendant obtained, or attempted to obtain, money and property by fraud. (*See, e.g.*, Dkt. 1 at 13–16, 24–25.)

*Fourth*, the *Ciminelli* decision is distinguishable because it did not involve any victims parting with money based on material misrepresentations or half-truths made with an intent to defraud. Defendant relies heavily on *Ciminelli*, which, as explained above, rejected the right to control theory of fraud. (*See generally* Dkt. 28.) But Defendant takes *Ciminelli* a step further and asks the Court to dismiss an indictment that that does not invoke that theory in any readily apparent way. (*See generally* Dkt. 1.) This argument fails because the Indictment does not employ any right to control language, such as a right to "valuable economic information." (*See generally* Dkt. 1.) On the contrary, the Indictment alleges numerous examples of

8

Defendant's actual and attempted misappropriation of funds from victims. (*See, e.g.*, *id.* at 7–11.) There is no suggestion, either in the Indictment or in the Government's briefing, that the prosecution will pursue conviction based on a right to control theory. (*See generally* Dkts. 1, 29.) Obtaining money or property "by means of false or fraudulent pretenses, representations, or promises," which is what is alleged here, remains the core of Section 1343.[2]

None of the other cases Defendant cites in support of his motion compels dismissal of the Indictment. Defendant's contention that *Ciminelli* implicitly overruled *United States v. Kelerchian,* 937 F.3d 895, 911 (7th Cir. 2019), fails because the object of the scheme in *Kelerchian* was tangible property; in any event, Defendant here is alleged to have taken money from the victims, not intangible property. *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006) is similarly distinguishable, as Defendant is again charged with specific instances of scheming to obtain money and property by fraud. (*See, e.g.,* Dkt. 1 at 13–16, 24–25.) Finally, *United States v. Catalfo*—where the defendant was an options and futures trader who misled a clearing firm into guaranteeing large risky trades "based on collateral fraudulently obtained from someone else"—is materially dissimilar to the facts alleged in this case.

---

[2] Defendant's assertion (Dkt. 28 at 20) that the Indictment does not allege any "attempt to prove actual economic loss" to the victims is both factually incorrect (*see, e.g.,* Dkt. 1 at 13–16; 27–35; 40–43) and immaterial: because an offense is complete where there is an intent to defraud, whether Defendant intended to repay the misappropriated funds does not matter. *See Pasquantino v. United States*, 544 U.S. 349, 371 (2005) ("The wire fraud statute punishes the scheme, not its success." (internal quotation marks omitted)); *United States v. Leahy*, 464 F.3d 773, 786–87 (7th Cir. 2006) (Section 1343 does "not require the government to prove . . . any loss"); *United States v. Sanders*, 893 F.2d 133, 138 (7th Cir. 1990) ("The aim of the . . . wire fraud statute[] is to punish the scheme to defraud rather than the end result.").

64 F.3d 1070, 1077 (7th Cir. 1995) (defendant deprived firm of the "right to control its risk of loss, which had a real and substantial value").

In sum, Defendant has not satisfied the high standard to dismiss an indictment. *See United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996). Defendant's effort to dismiss the wire fraud counts fail because: (1) as alleged in the Indictment, the object of the fraud scheme was money and property; and (2) unlike in *Ciminelli*, the Government does not rely on the right to control theory to secure a conviction. The Indictment adequately provides Defendant with notice of the charge of wire fraud in violation of Section 1343. It does so through use of the language of the charging offense itself and through the detailed factual allegations throughout the Indictment. To be sure, it will be for the Government to prove beyond a reasonable doubt that such a scheme, with a traditional property fraud objective, existed. But at this stage, no more is required.

## B.    Aggravated Identity Theft

Section 1028A criminalizes the use of a means of identification "without lawful authority." *See* 18 U.S.C. § 1028A(a)(1), (c)(5). To find a defendant guilty of aggravated identity theft, it must be found that: (1) the defendant committed a predicated felony offense; (2) the defendant knowingly transferred, possessed, or used a means of identification; (3) the defendant knew the means of identification belonged to another person; (4) the defendant knew that such transfer, possession or use was without lawful authority; and (5) the defendant did so during and in relation to the predicate felony offense. William J. Bauer Pattern Criminal Jury Instructions of the

Seventh Circuit 438 (2023 ed.); *see also Flores-Figueroa v. United States*, 556 U.S. 646, 648 (2009) (To convict a defendant of aggravated identity theft, the government must prove that the defendant committed the charged wire fraud and, in the course of doing so, "knowingly transferr[ed], possess[ed], or use[d], without lawful authority, a means of identification of another person.").

Defendant contends that because the predicate wire fraud counts cannot survive scrutiny, the aggravated identity theft counts must also be dismissed. (Dkt. 28 at 12.) Since Defendant's motion to dismiss the wire fraud counts fails, the motion to dismiss the aggravated identity theft counts must also fail.

## IV. CONCLUSION

Defendant's motion (Dkt. 28) to dismiss the Indictment is denied.

SO ORDERED in No. 22 CR 635.

Date: June 28, 2024

_____
JOHN F. KNESS
United States District Judge