**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES of AMERICA,

    Plaintiff,

        v.

MARK ALAN SCHWARTZ,

    Defendant.

No. 22 CR 635

Judge John F. Kness

**MEMORANDUM OPINION AND ORDER**

Defendant Mark Alan Schwartz was indicted by a grand jury on charges of wire fraud in violation of 18 U.S.C. § 1343 and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). (Dkt. 1.) Following the Court's denial of Defendant's motion to dismiss that indictment (Dkt. 49), the United States filed a superseding indictment (the "Superseding Indictment"), which charges defendant with five counts of wire fraud, in violation of 18 U.S.C. § 1343, one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and one count of perjury in violation of 18 U.S.C. § 1623(a).[1] (Dkt. 59.) Now before the Court are several additional motions, including Defendant's request to dismiss the Superseding Indictment.

In his renewed motion to dismiss the charging document (Dkt. 76), Defendant argues that, because the government has not alleged any person was deprived of a

---

[1] In view of the Superseding Indictment, Defendant's motion (Dkt. 51) to reconsider the denial of his motion to dismiss the original indictment is dismissed as moot.

traditional property interest protected under Section 1343, and because each count against Defendant is impermissibly vague, the Superseding Indictment must be dismissed. For the reasons provided below, which are similar to the reasons provided in connection with the denial of Defendant's motion to dismiss the original indictment, Defendant's present motion is likewise denied.

Defendant has also moved for a bill of particulars. (Dkt. 93.) Because, as explained below, the Superseding Indictment suffices to apprise Defendant of the charges against him, the a bill of particulars is not required, and the motion is denied. Defendant's motion (Dkt. 94) to sever Count Seven of the Superseding Indictment is also denied, because a limiting instruction will prevent any prejudice from trying the perjury charge simultaneously with the wire fraud and aggravated identity theft charges.

Finally, nonparty Randa Dumanian has moved (Dkt. 106) to quash Defendant's subpoena seeking various diary entries. As explained below, that motion is granted.

## I.    MOTION TO DISMISS THE SUPERSEDING INDICTMENT

Defendant seeks to dismiss the Superseding Indictment based on the Supreme Court's ruling in *Ciminelli v. United States*, 598 U.S. 306 (2023) and, separately, on *Skilling v. United States*, 561 U.S. 358 (2010), as well as the First and Fifth Amendments to the United States Constitution. (Dkt. 76 at 14.) As in his motion to dismiss the original indictment in this case, Defendant argues that, under *Ciminelli*, Section 1343 protects only traditionally-recognized property interests, but the

2

Superseding Indictment improperly relies on an amorphous right to control a corporation. Defendant further argues that each count within the Superseding Indictment must be dismissed because each seeks to criminalize behavior that amounts to a mere civil dispute regarding corporate control. (*Id.*) As a result, Defendant argues, the Superseding Indictment construes the charging statutes so broadly that it deprives him of "fair notice" regarding the criminality of his conduct and that the charges encourage "arbitrary enforcement" of criminal statutes. (*Id.*)

Perhaps unsurprisingly, the government disagrees with Defendant's arguments. (Dkt. 81.) In the government's view, because the Superseding Indictment proceeds under a traditional property-rights theory, *Ciminelli* is inapplicable. In addition, the government argues that, because the allegations within each count align with elements of the crimes charged, the charges are not impermissibly vague and do not otherwise violate Defendant's constitutional rights. Each count against Defendant, the government argues, should therefore proceed as charged.

### A. Legal Standard

Under Rule 12(b)(1) of the Federal Rules of Criminal Procedure, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When considering a motion to dismiss a criminal indictment, the Court assumes that the indictment's factual allegations are true and must "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *see also United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (per curiam) ("An indictment

is reviewed on its face, regardless of the strength or weakness of the government's case.").

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To be legally sufficient, an indictment must accomplish three things: "First, it must adequately state all the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, [it] must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). In other words, the indictment must "provide the defendant with some means of pinning down the specific conduct at issue," but it need not include every relevant fact. *Id.* (cleaned up). Courts "review indictments on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.* (cleaned up).

### B.    Counts One Through Five (Wire Fraud)

Section 1343 criminalizes "scheme[s] or artifice[s] to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. As the Supreme Court has explained, and as the Court has previously noted in this case (Dkt. 49 at 4), Section 1343's " 'money or property' requirement" limits the " 'scheme or artifice to defraud' element because the 'common understanding' of the words 'to defraud' when the statute was enacted referred to 'wronging one in his property rights.' " *Ciminelli*, 598 U.S. at 312 (quoting *Cleveland v. United States*, 531 U.S. 12, 19 (2000)).

4

      1.     The Superseding Indictment Does Not Rely on a "Right to Control" Theory.

*Ciminelli* explained that the "right to control" theory of wire fraud—where a defendant's scheme deprives a victim of "potentially valuable economic information . . . necessary to make discretionary economic decisions"—is not viable under Section 1343. *Id.* at 308. Section 1343 reaches only traditional property interests, and those interests do not include the right to information needed to make discretionary economic decisions. *Id.* at 316. Defendant argues that the Court should dismiss the wire fraud counts in the Superseding Indictment because they do not involve a traditional property interest as required by *Ciminelli*. (Dkt. 28 at 13.)

Dismissal of the wire fraud counts is unwarranted on these grounds, however, because the Superseding Indictment repeatedly states that Defendant obtained money, or sought to obtain money, through his alleged scheme. According to the Superseding Indictment, Defendant "secretly transfer[red] $324,000 from Company 2-PR's bank account at Wells Fargo to one of his own personal bank accounts" as part of an overarching scheme. (Dkt. 59 at 7.) Defendant also allegedly "drain[ed] the rest of the money from the company's bank account, in an amount totaling more than $3.9 million, . . . under the false pretense that he was 'safeguarding' company funds." (*Id.*) The Superseding Indictment further states that Defendant filed a "false corporate bankruptcy petition . . . in a fraudulent attempt to divert over $500,000 in company funds to himself and his family." (Dkt. 59 at 8.) And it alleges that Defendant submitted "a false invoice to [a] court-appointed receiver . . . seeking the payment of $325,750 to a bank account of his . . . choosing." (*Id.*)

In addition to describing a scheme by which Defendant sought to obtain money, the Superseding Indictment alleges that Defendant "rewarded himself and his family through a series of opaque stock transactions, arbitrarily issuing valuable shares of company stock to himself, to members of his family, and to others, at de minimis prices." (*Id.* at 9.) As the Superseding Indictment thus portrays, Defendant is alleged to have orchestrated a scheme by which he either obtained or sought to obtain money or shares of stock in corporate entities (as opposed to having sought a nebulous right to control economic decisions).

Although the Seventh Circuit has cautioned against criminalizing legitimate negotiation tactics under the wire fraud statute, *see United States v. Weimert*, 819 F.3d 351, 370 (7th Cir. 2016), the Superseding Indictment addresses a distinct scheme by which Defendant allegedly sought to misappropriate money and ownership of a corporate enterprise from his business partner ("Victim 1"). Each wire fraud count within the Superseding Indictment also identifies an instance where Defendant transmitted a wire communication "for the purpose of executing the scheme described above." (*Id.* at 28–32.) Because the wire fraud counts in the Superseding Indictment each pertain to a scheme to obtain traditional property interests, Defendant's argument to dismiss the Superseding Indictment under *Ciminelli* is unconvincing.[2]

---

[2] As the Court previously noted in its opinion denying Defendant's motion to dismiss the original indictment, whether *Ciminelli* could support the dismissal of an indictment is a question that need not be addressed at this time.

2.      The Wire Fraud Charges Are Not Void for Vagueness.

Defendant separately argues that the Court must dismiss the wire fraud counts in the Superseding Indictment because the wire fraud statute would be unconstitutionally vague if it extended to the alleged misrepresentations made by Defendant. A challenge to a statute as unconstitutionally vague "is a due process challenge." *United States v. Vorley*, 420 F. Supp. 3d 784, 806 (N.D. Ill. 2019). To satisfy due process, a penal statute "must define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (quoting *Skilling v. United States*, 561 U.S. 358, 402–03 (2010)). Defendant does not challenge the validity of the wire fraud statute on its face, but rather, its application to the facts alleged in the indictment. Defendant nevertheless does not show why an ordinary person would not be able to understand the criminality of the charged conduct or how the wire fraud counts encourage arbitrary or discriminatory enforcement.

a.      *Defendant's First Amendment Challenge*

Defendant argues that the first count of wire fraud, which turns on email Defendant sent to company shareholders regarding an "illegal retaliatory discharge" of Defendant as CEO and other matters, relies on a communication that is protected by the First Amendment. (Dkt. 76 at 18.) Defendant argues that it is "not a crime for a CEO to express his concerns or share his actions with company stakeholders following significant corporate events." (*Id.*) That may be so, but Defendant is not

7

charged with merely expressing concerns to shareholders. As the Superseding Indictment alleges, this communication was a lie, which facilitated a broader scheme to unlawfully obtain money or property. Such intentionally dishonest conduct amounts to fraud, which is not protected by the First Amendment. *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (citing *Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976)). Accordingly, the Court declines to dismiss Count One of the Superseding Indictment on First Amendment grounds.

### b. Defendant's "Fair Notice" Challenge

Defendant also argues that he did not have "fair notice" that the communications identified in each of the five wire fraud counts amounted to criminal activity. (Dkt. 76 at 17.) Defendant's fair notice arguments, however, frame the wire fraud counts as if they are limited to the specific communications referenced in each count. Defendant questions, for example, "how on earth" the wire fraud statute could criminalize "a harmless statement" made in a negotiation between business partners. (Dkt. 76 at 21–22.) But this does not accurately characterize the charges. Each wire fraud count connects a communication to the broader "scheme described above" in the Superseding Indictment, distinguishing Defendant's statements from a mere negotiation between business partners. (Dkt. 59 at 24–28.)

Although Defendant cites *United States v. Cosentino*, 869 F.2d 301, 308 (7th Cir. 1989), to argue that the alleged communications were not "integrally involved in the scheme to defraud" (Dkt. 87 at 10), that same case clarified that there must merely be "some link between the [communication] and the success of the scheme."

8

*Id.* (internal quotation marks omitted). Indeed, the link between a misrepresentation and a scheme distinguishes criminal conduct from deceptive but legitimate business tactics. *See United States v. Weimart*, 819 F.3d 351, 366 (7th Cir. 2016). And even "innocuous communications can qualify" as acts of wire fraud "so long as they are incident to an essential part of the scheme." *Jepson, Inc. v. Makita Corp.*, 24 F.3d 1321, 1330 (7th Cir. 1994).

In *Weimart*, the Seventh Circuit emphasized that "deceptions about parties' preferences and values, and thus their negotiating positions, are not material for purposes of wire fraud and cannot support" a wire fraud conviction. *Id*. In other words, the misrepresentations at issue in *Weimart* were not linked to a scheme. *See id*. In contrast, the Superseding Indictment articulates a traditional wire fraud theory in each count by alleging that certain communications were misrepresentations that facilitated a broader scheme to obtain property. (Dkt. 76 at 28–32.) Defendant's argument that the wire fraud counts rely on "uncharged conduct" therefore fails. (Dkt. 87 at 10.)

Because the allegations within the wire fraud counts track the elements of Section 1343, Defendant does not show how ordinary people would fail to understand such conduct to be unlawful. *See United States v. Smith*, 555 F. Supp. 3d 563, 578 (N.D. Ill. 2021) (due process "permits a statute's application to novel *conduct* so long as it within the statute's plain language"). Whether Defendant's statements were harmless, or whether they were in fact connected to an illicit scheme, is a question to be determined beyond a reasonable doubt at trial, but the wire fraud counts

9

sufficiently tie specific communications to a scheme such that an ordinary person would recognize the criminality of the alleged conduct.

### c. Defendant's "Arbitrary Enforcement" Challenge

Defendant further asserts that the wire fraud counts within the Superseding Indictment must be dismissed because each count "encourages arbitrary enforcement of unresolved corporate control disputes." (Dkt. 76 at 20, 22, 24–25.) As discussed above, a successful wire fraud charge requires the presence of a scheme to obtain money or other forms of property, a communication over an interstate wire in furtherance of the scheme, and the defendant's specific intent to defraud a victim. 18 U.S.C. § 1343; *Weimert*, 819 F.3d 355 ("To convict a person under § 1343, the government must prove that he '(1) was involved in a scheme to defraud; (2) had an intent to defraud; and (3) used the wires in furtherance of that scheme.' "). These elements distinguish wire fraud from civil disputes over corporate control and nullify the risk of arbitrary enforcement. *See Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) ("The Court has made clear that scienter requirements alleviate vagueness concerns."). In each count of wire fraud, the Superseding Indictment states that Defendant transmitted a certain communication "for the purpose of executing the scheme described above, knowingly transmitted and caused to be transmitted by means of [an interstate] wire." (Dkt. 59 at 28–32.) Accordingly, Defendant does not establish that the Superseding Indictment has encouraged arbitrary enforcement of wire fraud because it alleges elements of the offense, which distinguish the criminal nature of the alleged conduct.

In summary, the Superseding Indictment provides Defendant with adequate notice of the charge of wire fraud in violation of Section 1343. It does so through use of the language of the charging offense itself and through the factual allegations throughout the Superseding Indictment. To be sure, the government must prove beyond a reasonable doubt that such a scheme, with a traditional property fraud objective, existed before Defendant can be found to have violated the wire fraud statute. But at this stage, no more is required.

### C.   Count Six: Aggravated Identity Theft

Defendant argues that Count Six of the Superseding Indictment, a charge of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), must be dismissed because it is predicated on Count Four, one of the wire fraud charges. (Dkt. 76 at 24–26.) Having denied Defendant's motion to dismiss the wire fraud charges for the reasons discussed above, however, and given that Defendant does not present an alternate argument to dismiss the identity theft charge (*see* Dkt. 76; Dkt. 87), the Court declines to dismiss Count Six.

### D.   Count Seven: Perjury

Defendant argues that Count Seven of the Superseding Indictment, a count for perjury under 18 U.S.C. § 1623(a), must also be dismissed for vagueness. (Dkt. 76 at 26.) Count Seven alleges that Defendant gave false testimony under oath in a parallel civil case at a preliminary injunction hearing. (Dkt. 59 at 35.) It identifies Defendant's misrepresentations and further alleges that Defendant made them knowingly. (*Id.* at 37.) In addition, the Superseding Indictment identifies through a series of bullet

11

points how Defendant's testimony contrasted with the truth. (*Id.*) Defendant argues that, because this charge is the "exact issue pending before the Illinois civil courts," and because that issue remains unresolved in a civil proceeding, Defendant "could not possibly have had 'fair notice' that his statement was false." (Dkt. 76 at 26–27.) But the Superseding Indictment alleges that Defendant gave false testimony knowingly, an element of the offense under § 1623(a). Whether Defendant knew that his statements were false is an issue to be resolved beyond a reasonable doubt at trial. Given that Count Seven alleges conduct that aligns with the elements of perjury, the Superseding Indictment articulates a charge that an ordinary person would understand to encompass criminal conduct.

Defendant also states that Count Seven encourages "arbitrary enforcement of unresolved disputes" because the same issues are "pending between two different civil courts in the Northern District of Illinois." (Dkt. 76 at 27.) Perjury, however, is a criminal offense with its own distinct elements, including the requirement that a defendant knowingly made a false material declaration. 18 U.S.C. § 1623(a). Although findings regarding the elements of a perjury charge may be relevant to pending civil matters, Defendant does not show how charging conduct that aligns with each of element of the offense would encourage arbitrary enforcement of the criminal statute. Accordingly, the Court declines to dismiss Count Seven of the Superseding Indictment.

12

## II.    MOTION FOR A BILL OF PARTICULARS

Defendant moves for a bill of particulars, arguing that the Superseding Indictment does not sufficiently apprise him of the charges. (Dkt. 93.) But because the Superseding Indictment describes in detail the alleged criminal conduct, a bill of particulars is not needed.

### A.    Legal Standard

Courts hearing criminal cases "may direct the government to file a bill of particulars," meaning a more specific expression of the defendant's alleged criminal conduct. Fed. R. Crim. P. 7(f). A bill of particulars is not necessary if the indictment "sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981) (quoting *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978)). An indictment suffices if it "includes each of the elements of the charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the applicable statute or statutes." *United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013) (citing *United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003)).

### B.    Discussion

The Court will not direct the government to file a bill of particulars because the Superseding Indictment suffices to apprise Defendant of the charges. The Superseding Indictment sets forth each element of the charged offenses, the time and place of the alleged criminal conduct, and citations to the applicable statutes. (Dkt. 59 at 7–37.) In fact, the government has gone beyond this requirement: for each of

13

Counts One through Five (wire fraud), the government has specified the communication at issue, in addition to explaining in detail the alleged scheme to defraud. (*See id.* at 7–32.) For Count Six (aggravated identity theft), the government has specified the identification information at issue and the predicate felony. (*See id.* at 33.) For Count Seven (perjury), the government has specified the statements at issue and explained why they allegedly constitute perjury. (*See id.* at 34–37.)

Defendant does not contend that the Superseding Indictment lacks the offense elements, the time and place of the alleged criminal conduct, or statutory citations. (*See* Dkt. 93 at 1–6; Dkt. 104 at 2–10.) Instead, Defendant makes three unavailing arguments for a bill of particulars: (1) traditional wire fraud is complex, "and intangible rights are not protected"; (2) the Superseding Indictment is unclear as to what money or property is at issue; and (3) there is an immense amount of discovery. (Dkt. 93 at 3.)

Defendant's first argument, that a bill of particulars is necessary because the alleged scheme is complex, does not find support in precedent. Defendant appears to rely on *United States v. Sanders*, No. 1:23-cv-00372-1, 2025 WL 2962539 (N.D. Ill. Oct. 17, 2025), as the basis of his complexity argument. *Sanders* involved a drug conspiracy, and the defendant was charged with discharging a firearm in relation to a drug trafficking crime. *Id.* at *1. In that case, the court required a bill of particulars because the defendant sought "a limited, particularized piece of information": "the date and location of the drug activity the firearm [was] alleged to have furthered." *Id.* Without knowing the date and location of that predicate drug activity, the court

14

reasoned, the defendant would not be able to prepare his defense because he "would be left to guess which of the potentially dozens of alleged drug deals that took place over the course of thirteen months [would] serve as the basis of the government's § 924(c) charge resulting from the firearm incident." *Id.* at *2. Unlike for the firearm charge in *Sanders*, the government here is not required to identify a predicate offense for wire fraud. *See* 18 U.S.C. § 1343. Because all the elements of the offenses are alleged in the Superseding Indictment, there is no need for Defendant to guess at an element, and therefore a bill of particulars is not needed to notify him of an element.

That a court "may consider the complexity of the charges" when deciding to require a bill of particulars does not mean that a bill of particulars is required if the charges are complex. *United States v. Coffey*, No. 92 CR 203, 1993 WL 424239, at *10 (N.D. Ill. Oct. 19, 1993). Rather, complexity is merely a factor in determining whether the government has adequately apprised the defendant of the charges. As described above, the government has explained the alleged scheme to defraud—complex as it may be—with sufficient detail that Defendant can know the circumstances of each charged offense.

Defendant's second argument—that it is unclear what money or property is at issue in relation to the charged emails—is contradicted by the Superseding Indictment. The Superseding Indictment specifies both (a) the accounts from which Defendant allegedly misappropriated specified sums of money, and (b) the real property that Defendant allegedly misappropriated. (Dkt. 59 at 7–9.)

15

Defendant's third argument, that a bill of particulars is necessary because discovery is immense, is contradicted by case law. Defendant cites no authority to support his position, and ample authority exists for the opposite rule: that ample discovery obviates the need for a bill of particulars. *E.g.*, *United States v. Blanchard*, 542 F.3d 1133, 1140–41 (7th Cir. 2008) (affirming denial of bill of particulars because defendant "was the beneficiary of extensive pretrial discovery"); *United States v. Fassnacht*, 332 F.3d 440, 447 n.2 (7th Cir. 2003) ("The government in this case provided the defendants with extensive pretrial discovery, giving them full access to all documentary evidence in the government's possession, thus further obviating the need for a bill of particulars."). This high volume of discovery weighs against Defendant; as a result, and for the other reasons set forth above, a bill of particulars is not warranted.

## III.   MOTION TO SEVER

Defendant moves, under Rule 14 of the Federal Rules of Criminal Procedure, to sever Count Seven from the other counts in the Superseding Indictment. (Dkt. 94.) Count Seven charges Defendant with committing perjury during a preliminary injunction hearing in a civil case, *Dumanian v. Schwartz*, No. 19 C 6771 (N.D. Ill.). (Dkt. 59 at 34.) Defendant argues that Count Seven should be severed because the evidence that would be admitted to prove perjury would prejudice the jury against

16

him on the wire fraud counts. (Dkt. 94 at 6.) Because a limiting instruction would eliminate any risk of prejudice here, the motion to sever is denied.

## A.      Legal Standard

If the joinder of offenses in an indictment "appears to prejudice a defendant," "the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). On a Rule 14 severance motion, "the defendant bears the difficult burden of demonstrating prejudice from the joinder." *United States v. Berardi*, 675 F.2d 894, 900 (7th Cir. 1982). It is not enough for the defendant to show that separate trials would provide him with a better opportunity for acquittal. *United States v. Alexander*, 135 F.3d 470, 477 (7th Cir. 1998). A showing of "some prejudice" usually is insufficient; instead, the defendant must show "the most compelling prejudice," against which the court cannot protect. *United States v. Madison*, 689 F.2d 1300, 1305 (7th Cir. 1982) (quoting *United States v. Edwards*, 488 F.2d 1154, 1160 (5th Cir. 1974)).

Even if prejudice is shown, the tailoring of any relief is committed to the court's discretion, and a limiting instruction often cures any risk of prejudice, rendering severance unnecessary. *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993). A limiting instruction is "an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence." *United States v. Pulido*, 69 F.3d 192, 208 (7th Cir. 1995) (quoting *United States v. Berardi*, 675 F.2d 894, 901 (7th Cir. 1982)). If the jury "can reasonably be expected to keep the evidence separate as to each count . . . , severance should be denied." *United States v.*

17

*Rajewski*, 526 F.2d 149, 155 (7th Cir. 1975) (citing *Tillman v. United States*, 406 F.2d 930, 935 (5th Cir.), *vacated in part on other grounds*, 395 U.S. 830 (1969)).

### B.      Discussion

Defendant argues that trying the perjury count at the same time as the wire fraud counts would introduce "allegations" of "economic or emotional duress"—information regarding the civil case *Dumanian v. Schwartz*—that would potentially expose the jury to evidence not admissible if the trial were for only wire fraud. (Dkt. 94 at 6.) Defendant also argues that the perjury charge will prejudice the jury's ability to fairly evaluate his truthfulness at trial. (*Id.*) Defendant contends that a limiting instruction would not be sufficient to mitigate the risk of prejudice because of "the complex, confusing, and overlapping allegations" in his civil and criminal cases. (*Id.*)

For all these arguments, Defendant relies on only one case: the prosecution of Ghislaine Maxwell for violating the Mann Act by facilitating Jeffrey Epstein's sexual abuse of minors. *United States v. Maxwell*, 534 F. Supp. 3d 299 (S.D.N.Y. 2021), *aff'd*, 118 F.4th 256 (2d Cir. 2024), *cert. denied*, 146 S. Ct. 93 (2025). In the same indictment, Maxwell was also charged with perjury in connection with her testimony in a civil deposition. *Id.* at 307. The court severed the perjury charges because (1) joinder "would potentially expose the jury to a wider swath of information regarding civil litigation against Epstein that is remote from Maxwell's charged conduct," thereby prejudicing Maxwell on the Mann Act counts; (2) "the evidence presented on the Mann Act counts may prejudice the jury's ability to fairly evaluate Maxwell's truthfulness in her deposition, a critical element of the perjury counts";

18

and (3) joinder would "risk disqualifying Maxwell's chosen counsel based on their involvement in the earlier civil case." *Id.* at 320–21. The court also noted that much of the proof relevant to the Mann Act counts and the perjury counts did not overlap; in particular, many allegations of sexual abuse were relevant to one set of charges but not the other. *Id.* at 321.

Defendant's reliance on *Maxwell* is not persuasive because the perjury evidence here is not as inflammatory as the sexual abuse evidence in *Maxwell*, the perjury evidence is closely related to the wire fraud evidence, and there is no risk that joinder will disqualify Defendant's counsel. The *Maxwell* court was concerned that evidence of unrelated sexual assaults from the civil case would taint the jury against Maxwell on her criminal charges. In this case, by contrast, the perjury evidence relates to Defendant's business dealings, which do not raise the same risk of prejudice because they are less emotionally salient. Moreover, as Defendant admits, the perjury evidence here covers the same conduct that is alleged as part of the fraud scheme: Defendant's alleged termination and attempts to control the board of directors. (*See* Dkt. 94 at 6. *Compare* Dkt. 59 at 7–37 (Superseding Indictment describing alleged fraud scheme), *with* Dkt. 94 at 9–11 (Defendant's description of the perjury evidence).) Finally, Defendant does not argue that his counsel will be disqualified as a result of joinder. The risk of prejudice is thus far less than in *Maxwell*.

That said, there is a slight risk that the perjury charge could prejudice the jury's ability to evaluate fairly Defendant's truthfulness at trial. *See United States v. Pacente*, 503 F.2d 543, 547 (7th Cir. 1974). This risk, however, does not require

19

severance; on the contrary, a limiting instruction (*e.g.*, that the jury should not consider the charges as evidence of guilt and that the jury must consider each charge separately) will suffice to eliminate this risk. *See id.* at 547–48; *see also United States v. Kelly*, 99 F.4th 1018, 1026 (7th Cir. 2024) (affirming decision against severance because limiting instruction cured any prejudice).

Defendant argues that a limiting instruction is insufficient because the evidence of perjury overlaps with the evidence of a fraud scheme, and the jury will therefore confuse the evidence and the charges. (Dkt. 94 at 6.) But the perjury charges and the wire fraud and aggravated identity theft charges do not have many overlapping elements: the jury thus will be able to sort out the evidence as to each count, meaning that severance is not required. *See United States v. Weber*, 437 F.2d 327, 332 (3d Cir. 1970). As a result, the motion to sever is denied.

## IV. MOTION TO QUASH

Defendant has issued a subpoena to nonparty Randa Dumanian, seeking all notes and entries in Dumanian's diary or notebooks from 2019 to 2022 relating to Defendant and two named corporations. (Dkt. 106-1 at 3, 7.) The government has already provided Defendant with twenty-one pages of Dumanian's diary, which were given to the government and to Defendant with some redactions labeled "HIPAA" and "Attorney-Client Privilege." (Dkt. 110 at 4.) According to the government, those pages are the only pages it has ever had. (Dkt. 98 at 2.) Dumanian moves to quash the subpoena. (Dkt. 106.) To aid the Court's consideration of her motion, Dumanian gave

20

an unredacted copy of her 2019–2022 diary entries to the Court for *in camera* review. The motion to quash is granted because the subpoena does not seek relevant evidence.

### A. Legal Standard

The parties to a criminal case may issue subpoenas to order witnesses "to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). If compliance with a subpoena would be unreasonable or oppressive, the court may quash or modify the subpoena. Fed. R. Crim. P. 17(c)(2). The party seeking production has the burden of showing that the subpoena is proper by establishing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (footnote omitted); *United States v. Bases*, Nos. 18 CR 48-1, -2, 2021 WL 6621287, at *3 (N.D. Ill. Apr. 22, 2021) (discussing burden on party seeking production). To carry his burden, the party seeking production "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700.

### B. Discussion

The subpoena is improper because it requests information irrelevant to the charges against Defendant and is intended as a proscribed "fishing expedition."

Defendant has not demonstrated that the diary entries he seeks are relevant to the charges. Rule 17(c) "is not a discovery device"; rather, "it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial." *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) (first citing *Nixon*, 418 U.S. at 700; and then citing *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992)). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.[3]

Defendant's only argument for relevance is that the government presented the redacted twenty-one pages it possessed to the grand jury to secure Defendant's indictment. (Dkt. 110 at 7.) Even if Defendant were seeking only unredacted versions of these twenty-one pages, the Court's *in camera* review reveals that the redactions are of material subject to the attorney-client privilege, personal health information, or other irrelevant information to which Defendant is not entitled. *See United States v. West*, No. 08 CR 669, 2010 WL 4386696, at *3 (N.D. Ill. Oct. 26, 2010) (quashing

---

[3] Defendant argues that "it is enough to show that the requested evidence is relevant, or there are 'other valid *potential* evidentiary uses for the [subpoenaed] materials.' " (Dkt. 110 at 7 (quoting *Nixon*, 418 U.S. at 702).) This framing of the relevance requirement (*i.e.*, instead of showing relevance, a defendant may show some other evidentiary use) results from misreading *Nixon*. After noting that generally "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," *Nixon* found that there were "other valid potential uses" for the recordings sought. *Nixon*, 418 U.S. at 701–02. The proper dichotomy is therefore (a) evidence used for impeachment, and (b) evidence used for other purposes; not (c) relevant evidence, and (d) evidence used for other purposes. "Irrelevant evidence is not admissible," Fed. R. Evid. 402, and cannot be sought under Rule 17(c). *Nixon*, 418 U.S. at 699–700.

subpoena for Army personnel records in part because "the contents of the personnel files may contain personal, even confidential, material such as disciplinary reports, medical histories, or other information that the Defendants are not entitled to see").

Defendant does not even speculate about what information may be contained in the diary entries he seeks, let alone explain how those entries relate to the charges; instead, Defendant merely asserts that the entries may be useful for impeachment. (*See id.* at 8–9.) But generally "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," and Defendant has not argued why this general rule should not apply, so Defendant is not entitled to those entries. *Nixon*, 418 U.S. at 701. That Defendant does not know whether the entries contain relevant information because he has not seen the entries does not entitle him to see them. *See Tokash*, 282 F.3d at 971 (rejecting this "chicken or egg" argument as a basis for subpoena because "Rule 17(c) is not a discovery device"). Defendant's lack of knowledge instead reveals that the subpoena is intended as a "fishing expedition" prohibited by *Nixon*. 418 U.S. at 700. Because the subpoena is improper for not seeking relevant evidence, the motion to quash it is granted.

## V.    CONCLUSION

Defendant's motion (Dkt. 51) to reconsider the denial of his motion to dismiss the indictment is denied as moot in view of the Superseding Indictment. Defendant's motion (Dkt. 76) to dismiss the Superseding Indictment is denied. Defendant's motion for a bill of particulars (Dkt. 93) is denied. Defendant's motion (Dkt. 94) to sever

24

Count Seven of the Superseding Indictment is denied. Randa Dumanian's motion to quash (Dkt. 106) is granted.

SO ORDERED in No. 22 CR 635.

Date: June 25, 2026

_____
JOHN F. KNESS
United States District Judge